UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANITA R., **Plaintiff,** v. FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, **Defendant.** | No. 23 CV 00454 Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anita R. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse and remand [9][1] is granted, defendant's motion for summary judgment [15] is denied, and the decision denying the application for benefits is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

**Background**

On September 27, 2019, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. On September 30, 2019, plaintiff filed a Title XVI application for supplemental security income. In both applications, plaintiff alleged a disability onset date of August 18, 2018. Plaintiff's claims were denied initially on April 16, 2020, and upon reconsideration on February 10, 2021. Plaintiff requested a hearing, which was held before an administrative law judge (ALJ) on October 19, 2021. Plaintiff chose to appear without an attorney or other representative at the hearing. [8-1] 12, 29–33. On May 4, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled.

The ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff engaged in substantial gainful activity in the first and third quarters of 2020, but that plaintiff stopped working sometime in the third quarter of 2020. The ALJ found that there has

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [8], which refer to the page numbers in the bottom right corner of each page.

been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity. At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine and degenerative joint disease of the right hip. The ALJ found that plaintiff has several non-severe impairments, including hypertension, hepatitis C, and osteopenia, and that plaintiff's active crack cocaine use and reports of heavy alcohol consumption are not severe impairments. The ALJ found that there is insufficient objective evidence to establish neuropathy as a medically determinable impairment. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that plaintiff cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; and can occasionally balance, stoop, kneel, crouch, and crawl. At step four, the ALJ concluded that plaintiff is capable of performing past relevant work as a laundry worker and as a housekeeping cleaner. The ALJ ended the analysis there and did not make an alternative finding at step five. Accordingly, the ALJ found that plaintiff has not been under a disability as defined in the Social Security Act from August 18, 2018 through the date of the decision.

The Appeals Council denied review on November 28, 2022, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[2]

## Legal Standard

The Court reviews the ALJ's decision deferentially to "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). *See also Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (stating that to uphold an ALJ's decision, "it must rest on substantial evidence . . . untainted by an erroneous credibility finding"). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). But where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the

---

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [5].

case must be remanded." *Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 (N.D. Ill. Mar. 18, 2024) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). The same is true of an ALJ's credibility determination; the "Court will uphold an ALJ's credibility determination unless that determination is 'patently wrong,'" *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022), but "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record[.]'" *Engstrand*, 788 F.3d at 660.

## Discussion

Plaintiff argues that the ALJ erred in two ways: (1) the ALJ did not properly evaluate the opinion of Dr. Post and (2) the ALJ's credibility determination was not supported by substantial evidence. [10] 6–15. Within both of these arguments, plaintiff also asserts that the ALJ "erroneously found that there was 'insufficient objective evidence to establish neuropathy as a medically determinable impairment.'" [*Id.*] 8, 12–13 (quoting [8-1] 15–16).

The Court will first address plaintiff's assertion that the ALJ failed to consider the required credibility factors in assessing her subjective complaints of pain. [10] 11–12 (citing 20 C.F.R. § 416.929(c)(3)). Plaintiff argues that the ALJ's discussion only considered the medical evidence of record, did not substantially explain the credibility finding, and did not discuss important pieces of evidence that supported plaintiff's complaints of pain. [*Id.*] 14. Although short, the medical record includes records of plaintiff's complaints of pain to treating providers. [8-1] 307, 381–83, 400–01, 453–54. In a January 2020 function report, plaintiff stated that she has "constant pain" and that her conditions slow her down. [8-1] 237. She alleged that it hurts to stand long and that she cannot walk much, needing to stop and rest for five to ten minutes after walking two blocks. [*Id.*] 242. A May 2020 disability report noted that plaintiff's "conditions have worsened and she is less able to perform daily activities." [*Id.*] 246, 249. In a September 2020 function report, plaintiff stated that she has "constant pain" and reported that she has to sit down to fold linens and that it hurts to pull and push her linen cart at work. [*Id.*] 255. In a May 2021 disability report, plaintiff reported greater changes in her daily activities. [*Id.*] 270. At the October 19, 2021 hearing, plaintiff testified to the pain she started experiencing and how it began to affect her job in Louisiana before she moved to Illinois to live with her daughter. [*Id.*] 37–38. Plaintiff explained that she now lives in Chicago with Phil Butler, who has "been a big help to [her] in a lot of ways," and testified about her pain:

> If I stand up in one place just walking, maybe say I'll walk half a block, a block then the pain goes radiating and stuff and it – sometimes it'll make my leg, my left leg go numb. But my right leg is in terrible pain and then it gets down into my – to like my pelvic area and stuff.

3

[*Id.*] 38. Plaintiff testified to the difficulties she has with walking and standing due to the pain and that she uses a walker daily. [*Id.*] 37–39, 42, 49, 55.

"To determine the credibility of allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). Additionally, "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," 20 C.F.R. § 404.1529(c)(3), "Social Security Ruling 16-3p explains [other] factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Wilder*, 22 F.4th at 653 (citing 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529). These factors include daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate symptoms; and treatment, other than medication, that an individual receives or has received. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3). The Court "will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citing *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008)). The regulations mandate that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. In other words, although the Court's review is deferential, "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record[.]'" *Engstrand*, 788 F.3d at 660. The Court finds that the ALJ did not do so here.

The ALJ acknowledged plaintiff's assertions that "she cannot work due to pain in her legs and pelvic area" and plaintiff's testimony that "she cannot shop, that she cannot stand too long, that walking causes her pain to radiate and make her legs go numb, that she has to stand up and hold on to something, and that she uses a walker everywhere she goes now." [8-1] 17. But the ALJ found that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent with the medical evidence of record." [*Id.*] The ALJ summarized the medical record, noting plaintiff's "mostly normal performance during physical examinations" and that diagnostic imaging showed mild degenerative disc disease and mild hip degeneration. [*Id.*] 17–18, 19. However, "an ALJ may not discount a claimant's symptom statements 'solely because they are not substantiated by objective evidence.'" *House v. Berryhill*, No. 17 C 3936, 2018 WL 3022678, at *3 (N.D. Ill. June 18, 2018) (quoting SSR 16-3p). "This is particularly true with allegations of pain." *Id.* "[A]n ALJ must articulate specific reasons for discrediting testimony about pain even if the degree of pain is not corroborated by medical evidence in the record."

4

*Burnam v. Colvin*, 525 F. App'x 461, 464–65 (7th Cir. 2013). Put another way, "[a]n ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014).

First, "in assessing a claimant's alleged symptoms, an ALJ 'is required to evaluate a claimant's activities of daily living and explain why the claimant's activities are inconsistent with her description of her symptoms.'" *Danny T. v. O'Malley*, No. 23 C 15008, 2024 WL 4170207, at *3 (N.D. Ill. Sept. 12, 2024) (quoting *Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *11 (N.D. Ill. Aug. 11, 2022)). *See* SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i). The ALJ's only mention of plaintiff's activities of daily living is that during the February 2020 consultative exam, plaintiff "reported independently performing activities of daily living." [8-1] 18 (citing [*id.*] 347). There is no further explanation either in the ALJ's decision or in the consultative exam notes themselves. And at the time of the consultative exam, plaintiff was "liv[ing] at home alone." [*Id.*] 347. But that is not an accurate picture of the entire relevant timeframe, as plaintiff then moved to Illinois and lived first with her daughter and then with Phil Butler. The ALJ acknowledged Mr. Butler's testimony that he takes plaintiff to appointments and that "he does most of the cooking but they do the laundry together[.]" [*Id.*] 19. As for plaintiff's hearing testimony, the ALJ merely noted that plaintiff "states that she cannot shop." [*Id.*] 17. The ALJ's decision did not mention plaintiff's testimony that she cannot clean a bathtub or a sink or do any mopping or sweeping and that Mr. Butler does "all that basic housecleaning." [8-1] 39. The ALJ noted that plaintiff "uses a walker everywhere she goes now," but did not acknowledge plaintiff's testimony that she "basically" does not "leave the house nowadays" because moving around too much causes more pain. [*Id.*] 42. And the ALJ's decision did not acknowledge plaintiff's testimony that, "I can't do the things I need to do for myself" and that she sometimes has trouble getting up and going to the bathroom, so she has "a potty in the room" to avoid always having to go down the hall. [*Id.*] 47. The ALJ's mere passing reference to plaintiff's and Mr. Butler's hearing testimony is insufficient. The decision contained no analysis, nor did the ALJ engage with the evidence of plaintiff's activities of daily living beyond citing one note from the 2020 consultative exam. "As a result, the Court has no way to know what conclusion (if any) the ALJ reached regarding Plaintiff's continued problems with activities of daily living." *Diane P. v. Saul*, No. 19 C 0782, 2020 WL 4053780, at *9 (N.D. Ill. July 20, 2020).

Furthermore, the ALJ's decision included inadequate consideration of plaintiff's treatment history and medications, first noting that plaintiff reported during an August 25, 2021 visit that "Tylenol was providing some pain relief" and then referring to plaintiff's "minimal treatment." [8-1] 18, 19. In summarizing the medical record, the ALJ's decision also noted that "[t]here is a gap in the treatment record from August 2019 until June 2021." [8-1] 18. *See also* [*id.*] 19 (finding that the residual functional capacity assessment was supported by, among other things, "the

5

substantial gap in the treatment record from August 2019 to July 2021"). It is not clear whether the ALJ only noted this in summarizing the medical record or if the ALJ considered this point in making a credibility determination.

SSR 16-3p acknowledges that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9. But the regulation also instructs that ALJs "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.*; *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (noting that SSR 16-3p "provides that an ALJ must consider possible reasons for a failure to seek treatment"). Courts and SSR 16-3p recognize a variety of reasons why individuals do not comply with or seek treatment in a manner consistent with their complaints, including lack of insurance, lack of access, inability to afford treatment, side effects, etc. *See, e.g.*, *Murphy*, 759 F.3d at 816 ("There may be a reasonable explanation behind Murphy's actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects."); *McClesky v. Astrue*, 606 F.3d 351, 352 (7th Cir. 2010); *Orienti v. Astrue*, 958 F.Supp.2d 961, 977 (N.D. Ill. 2013) ("ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking receiving medical care.").

The ALJ's decision summarized the medical record, noting plaintiff's "mostly normal performance during physical examinations" and that diagnostic imaging showed mild degenerative disc disease and mild hip degeneration. [8-1] 17–18, 19. But "a summary is not a substitute for analysis." *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *3 (N.D. Ill. Mar. 29, 2024). The ALJ did not explore reasons for plaintiff's "minimal treatment" or "the substantial gap in the treatment record from August 2019 to July 2021." [8-1] 19. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) ("And the ALJ concluded from Thomas's gap in treatment between August 2011 and September 2012 that her symptoms were not as severe as she alleged, but . . . he did not explore her reasons for not seeking treatment, another error."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("Here, although the ALJ drew a negative inference as to Craft's credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that Craft had reported an inability to pay for regular treatment and medicine."). At the hearing, plaintiff testified about her minimal medical treatment while living in Louisiana and about her struggles with transportation: "[T]he pain was getting worser because I was taking care of myself, I had to provide for myself . . . I couldn't go back and forth

6

to the hospitals, I didn't have transportation, I just had to make it the best way I could in whatever direction I had to go." [8-1] 37. *See also* [*id.*] 42 ("I didn't have transportation and on my route, the buses I don't care for all of that because when I'm hurting, it keeps the blood pressure up. If I'm hurting and I can't walk, I didn't have a walker, I didn't have a walking cane or anything at that time."), 258 (September 2020 function report indicating that plaintiff does not have a car or a license). Plaintiff also testified that while she was living and working in Louisiana, she did not "have any other income and [her] job was very important," so when she was in pain, she "couldn't go leave and leave [her] job and go and be at no hospital." [*Id.*] 41. The ALJ's decision did not explore or mention these factors in assessing plaintiff's "minimal treatment" or "the substantial gap in the treatment record from August 2019 to July 2021."[3]

As for medications, the ALJ only noted that during an August 25, 2021 doctor's appointment, plaintiff reported that "Tylenol was providing some pain relief." [8-1] 18 (citing [*id.*] 400). Plaintiff mentioned at the hearing that "one time [she] was on some Naprosyn" and in a September 2020 function report, plaintiff reported that she was taking Naproxen and cyclobenzaprine, but that they made her "sleep quickly" and "dizzy, sleepy and tired more." [8-1] 46, 262. Plaintiff also elaborated on how she felt the Tylenol was working to manage her pain:

> But they give me the 500 milligram Tylenols, and they really don't work but I just take them. . . . because when the pain . . . sets in there is no turning it back then when it really sets in. But just sometime when it gets a little aching in my hip or in my knee then I – you know, if I deal with it, I take me a couple pain pills and it be okay.

[8-1] 46. The ALJ's decision did not mention this medication history or reported side effects, nor did it acknowledge plaintiff's additional testimony that despite some relief from Tylenol, her pain continued and the medication did not always work.

Finally, the ALJ also discredited plaintiff's subjective complaints of pain based on her work history, finding that plaintiff's "ability to perform work activity at or close to [substantial gainful activity] levels during most of the period at issue indicates that the claimant's symptoms are not debilitating." [8-1] 19. However, the ALJ's decision did not acknowledge plaintiff's testimony as to the limitations and accommodations she eventually required to continue working. Plaintiff testified that when she was working in a nursing home in Louisiana doing laundry, she was experiencing issues and pain in her legs but was able to still continue in that job because of accommodations made by her particular employer:

---

[3] Furthermore, following this gap in time, and despite citing to these records, [8-1] 18, the ALJ did not acknowledge or discuss the assessment plan following plaintiff's October 13, 2021 visit recommending an electromyography (EMG) and nerve conduction study. [8-1] 454.

7

>And this started getting where I couldn't walk around – you know, I had to fold clothes and be standing and stuff, I have to stand up – you know, fold sheets and like work and stuff. But it got to the point where I could not do the standing but because I did such a professional job, and I knew my job very well . . . they kept me on because I knew how to do my job. But they allowed me to sit down and do my job . . . . And because of the job that I had and because of me being experienced and everything, they allowed me to be able to continue doing my job, but . . . when I would have to cart my personal clothings and stuff out to the people on the halls and stuff, I would have a longer time trying to get round to it because I couldn't walk a lot of times – you know, fast. Then when I walked so far, I would have to sit down, and then they allowed for me to also do that.

[8-1] 37–38. In recognizing plaintiff's ability to work during part of the relevant time period, the ALJ's decision did not mention or acknowledge these alleged allowances plaintiff's prior employer made that enabled her to continue working in that job.

"An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce*, 739 F.3d at 1051. Neither of these situations applies here. Nor can the Court find that any error by the ALJ is harmless, as the credibility determination is significant to the ALJ's conclusion that plaintiff is capable of performing light work/past relevant work, and plaintiff's subjective complaints of pain focus on her inability to stand, walk, and complete the work required in her previous jobs. The Court cannot "predict with great confidence" what effect the ALJ's proper evaluation and articulation of plaintiff's complaints of pain might have on the ALJ's assessment of plaintiff's limitations and RFC determination as a whole. *Wilder*, 22 F.4th 644, 654. Furthermore, defendant does not argue that any error in the ALJ's evaluation of the SSR 16-3p factors in assessing plaintiff's subjective symptoms is harmless.[4] Such an argument is therefore forfeited. *See James M. v. Kijakazi*, No. 20 CV 2082, 2023 WL 3652862, at *7 n.6 (N.D. Ill. May 25, 2023); *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived.") (Sykes, J. concurring).

Because the Court is remanding on this basis, it does not address plaintiff's other arguments. However, this should not be construed as a finding that the ALJ did or did not err in the other ways identified by plaintiff.

---

[4] Defendant only argues that the ALJ's use of the boilerplate "not entirely consistent" language is harmless. [16] 12.

8

## Conclusion

For the foregoing reasons, plaintiff's motion to reverse and remand [9] is granted and defendant's motion for summary judgment [15] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 20, 2025**